UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALERIE DORI BROWN,

               Plaintiff,

      v.                                      **DECISION AND ORDER**
                                                19-CV-508S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

       1.       Plaintiff Valerie Brown brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits under Title II and Title XVI of the Act.  (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

       2.       Plaintiff protectively filed her application for benefits under Title II of the Act with the Social Security Administration on March 16, 2015. (R.[1] at 153.) She then filed for benefits under Title XVI of the Act on August 30, 2016. (R. at 235.) Plaintiff alleged disability beginning on May 1, 1998, due to borderline personality disorder, chronic depression and anxiety, PTSD, and some OCD. (R. at 154.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Stephen Cordovani held a hearing on October 2, 2017, at which he determined that medical opinion evidence was needed and rescheduled the hearing (R. at 58-85.) The ALJ held a further hearing on March 29, 2018, at which Plaintiff, represented by her

---

[1] Citations to the underlying administrative record are designated as "R."

attorney, appeared and testified. (R. at 86-152.) Vocational Expert Timothy Janikowski also appeared and testified. (R. at 86.) At the time of the hearing, Plaintiff was 59 years old, with a high school diploma, and prior work experience as a library technician. (R. at 102, 263.)

3.      The ALJ considered the case *de novo* and, on July 5, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 13-25.) On February 25, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on April 18, 2019, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 15.)  Plaintiff filed a response on March 5, 2020 (Docket No. 16), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

---

[2] The ALJ's July 5, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

activity since her alleged disability onset date of May 1, 1998. (R. at 15.)  At step two, the ALJ found that Plaintiff has the following severe impairments: depression; anxiety; and PTSD. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 17.)

11.     Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> she can understand, remember and carry out simple instructions and tasks; she is able to work in a low stress environment with only simple instructions and tasks, no supervisory duties,  no independent decision-making, no strict production quotas, and minimal changes in work routine and processes; she can have frequent interaction with supervisors, co-workers, and the general public.

(R. at 19.)

12.     At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 23.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date of May 1, 1998, and the date of the decision. (R. at 25.)

13.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ failed to properly consider the medical evidence of record and the ALJ improperly assessed her credibility.

14.     Plaintiff first argues that the ALJ failed to properly consider the opinions of Plaintiff's treating physician, Dr. Michael Slater and her mental health counselor, Kim Leiker. Defendant argues that the ALJ reasonably gave Dr. Slater's opinion less weight due to the inconsistency of his opinion with the rest of the medical record, and that the ALJ appropriately incorporated Ms. Leiker's opinions into Plaintiff's RFC determination.

15.     Plaintiff treated with Dr. Slater from 2015 through 2018. On June 2, 2015, Dr. Slater diagnosed Plaintiff with knee and joint problems, possible psychiatric issues requiring follow up, esophageal reflux; osteoarthritis (R. at 533-34.)  On August 27, 2015, Dr. Slater noted that anxiety, depression, and lumbago were "resolved." (R. at 538.) On September 30, 2015, and February 10, 2016, Dr. Slater indicated a negative finding for psychiatric issues. (R. at 542, 557.)

16.     On December 20, 2016, Dr. Slater filed out a medical screening form for Plaintiff. He rated her as "very limited" (the most limited category) in all of the applicable categories:   walking; standing; sitting; lifting; pushing; seeing; hearing; speaking; using hands; stairs; understanding and remembering instructions; carrying out instructions; maintaining attention; making simple decisions; interacting appropriately with others; maintaining socially appropriate behavior; maintaining basic standards of hygiene and grooming; and being able to function in a work setting at a consistent pace. (R. at 603; same form at R. at 798-99.) He opined that Plaintiff's "chronic pain and depression" prevented her from working.

17.     At an August 8, 2017, visit to Dr. Slater, Plaintiff denied depression, insomnia, mood changes, hearing change and hearing difficulty, and substance abuse. (R. at 760.) On examination, she was alert, oriented, with grossly intact memory, an

appropriate attitude, clear thought process, and no delusions, hallucinations, obsessions, preoccupations, or obsessive thoughts. (Id.) Her vision was grossly normal, and her hearing was grossly normal for conversation. (R. at 761.) Her current medications were Linzess, NP Thyroid, and clotrimazole. (Id.) Dr. Slater assessed Plaintiff with dental caries, hypothyroidism, and nicotine dependence. (R. at 762.) At a visit with Dr. Amy Lynn Wnek on August 28, 2017, Plaintiff denied anxiety and depression. (R. at 607.)

18.      Plaintiff underwent consultative medical examinations on November 28, 2017. Dr. Trevor Litchmore noted that Plaintiff claimed depression and anxiety and stated she was taking Linzess, Bisacodyl, bupropion,[3] and Ibuprofen. (R. at 716.)  Dr. Lichtmore noted that Plaintiff could shop, do laundry, cook, and clean. (Id.) Dr. Lichtmore diagnosed Plaintiff with depression and anxiety disorder, and Hashimoto's thyroiditis. (R. at 708.) Psychologist David Scheich assessed Plaintiff on the same day. He noted that Plaintiff could NOT cook, prepare food, clean, do laundry, or shop. (R. at 720.)  Dr. Scheich noted that Plaintiff had an "odd eccentric personality." (R. at 727). He diagnosed her with major depressive disorder, recurrent, mild, generalized anxiety disorder, PTSD, and rule out schoziod type personality disorder. (R. at 721.) He considered her prognosis to be fair, "given the lack of severe psychiatric symptoms." (Id.) He opined that she had mild limitations in many areas of functioning, but that this would not interfere with her ability to function on a daily basis. (R. at 726.)

19.      Plaintiff visited Dr. Slater on November 15, 2017, for a follow up visit. Her medications were listed as Linzess, ibuprofen, NP Thyroid, and clotrimazole. She did not

_____

[3] "Bupropion is used to treat depression. …It may work by helping to restore the balance of certain natural chemicals (neurotransmitters) in your brain." https://www.webmd.com/drugs/2/drug-13507-155/bupropion-hcl-oral/bupropion-oral/details, accessed 7/31/2020.

have any psychiatric medications listed, and Dr. Slater did not ask about her psychiatric status. (R. at 752.) On December 14, 2017, Plaintiff saw Dr. Slater again, upset that her disability form was incorrect. (R. at 742.) She presented with depression and crying (R. at 742), but denied a history of mental health problems. (R. at 745.) Dr. Slater now assessed that she had depressive episodes and generalized anxiety disorder, both of which "prevent her from working." (R. at 745.)

20.     At a February 13, 2018, Dr. Slater noted no psychological issues in his system review, did not list bupropion in his list of medications, and assessed Plaintiff's generalized anxiety disorder as "stable." (R. at 815.)

21.     Physical therapy notes show that Plaintiff was treated for a shoulder injury, knee pain, and back pain, between 2015 and 2018. and PT. (R. at 594-95.) She experienced shoulder and back pain in August 2015, and received physical therapy. (R. at 665.) She experienced a shoulder injury in early 2016, but by November 9, 2016, Dr. Brendan Brownell noted that her pain had improved and her range of motion had been restored. (R. at 595.) On October 1, 2017, she attended physical therapy for "mild dull achy pain" in her lower mid back. (R. at 661.) On April 10, 2018, Plaintiff went to physical therapy reporting that she slept on her back wrong and had recurring pain. (R. at 827.) Her plan of care included functional mobility training, manual therapy, and a home exercise program. (Id.)

22.     The ALJ gave Dr. Slater's opinion little weight, finding that his opinion that Plaintiff was "very limited" in all aspects of life was not consistent with the objective medical findings in the rest of the record. (R. at 22.)

23.     Mental Health Counselor Kim Leiker's letters indicate that Plaintiff had trouble dealing with triggers arising from past trauma. (R. at 654.) On September 27, 2017, she noted that Plaintiff's responses to stressors and triggers ranged from "debilitating" to bouts of mild depression to crying, feeling withdrawn, and wanting to isolate. (Id.) Ms. Leiker opined that Plaintiff's symptoms interfered with her ability to function in daily life, and affected her ability to maintain employment, though she did not specify the extent of these limitations. (R. at 653-54.) Ms. Leiker noted that Plaintiff was "making gradual progress" in her therapy. (R. at 654.)

24.     In further letters, dated April 9 and April 24, 2018, Ms. Leiker stated that Plaintiff was making progress, but that she experienced "defragmented memory" and her cognitive processing time was slowed. (R. at 824.) Ms. Leiker did not assess in detail how these impairments affected Plaintiff's ability to work, but stated that they were a "lifelong struggle." (R. at 825.) Ms. Leiker advised that Plaintiff continue with counseling three times a week and follow up with her medical doctor regarding her memory defragmentation and slowed processing time. (R. at 830-31.)

25.     The ALJ gave great weight to Ms. Leiker's opinion that Plaintiff's mental health would cause more than minimal work-related limitations.  The ALJ's RFC indicated that Plaintiff could work only in low-stress environments, with only simple instructions and tasks, no supervisory duties, no independent decision-making, no quotas, and minimal changes in routine, and with frequent interaction with supervisors, co-workers, and the public. (R. at 19.)

26.     The treating physician rule provides that "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so

9

long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019). If an opinion is inconsistent with the other substantial evidence in the record, an ALJ need not give the opinion controlling weight. Id.

27.    If the ALJ determines that the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it. In doing so, it must consider the following, nonexclusive "Burgess factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)).

28.    An ALJ need not explicitly walk through these factors, so long as the Court can "conclude that the ALJ applied the substance of the treating physician rule ... and provide[d] 'good reasons' for the weight she gives to the treating source's opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2)). At both steps, the ALJ must "give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion." Id.

29.    Having examined the medical record, this Court finds no error in the ALJ's decision to give little weight to Dr. Slater's opinion. It was reasonable for the ALJ find his opinion inconsistent with the rest of the record, since Dr. Slater's own treatment notes from a number of office visits do not support the level of disability he stated on the opinion

forms he filled out. While his opinions state without variation that Plaintiff was very limited in every possible category listed, he notes few such symptoms in his treatment notes during the years he treated Plaintiff.  His opinions therefore appear to be inconsistent with the medical evidence, including his own treatment notes.  This Court finds that the ALJ properly applied the treating physician rule in assessing Dr. Slater's medical opinions. Lambert v. Commissioner, 2016 U.S. Dist. LEXIS 39833 at *20 (N.D.N.Y. 2016) (ALJ did not err in implicitly rejecting treating physician's opinion that plaintiff would miss two days of work per month, because it was inconsistent with the medical record, and specifically, with normal physical examinations and objective test results).

30.     As to Ms. Leiker's opinion, this Court finds that the ALJ properly incorporated the limitations on interpersonal relations and concentration Ms. Leiker noted into its RFC determination. Plaintiff's RFC limited her to a low-stress work environment with minimal changes, simple instructions, no supervisory duties, and no independent decision-making. This is consistent with Ms. Leiker's opinion letters, and that the ALJ's opinion is therefore supported by substantial evidence.

31.     Plaintiff also argues that the ALJ's mischaracterization of her activities of daily living led him to incorrectly assess her credibility. Defendant argues that the ALJ properly assessed the Plaintiff's subjective complaints against the entire record, including her alleged activities of daily living, and provided good reasons for not fully crediting her subjective complaints. This Court finds no error in the ALJ's determination.

32.     "It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010) (quoting Aponte v.

Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (second alteration in original) (internal quotation marks omitted). A court has no reason to second-guess the credibility finding where the ALJ has identified specific record-based reasons for his ruling. Id.

33.     Here, the ALJ found that Plaintiff's conditions were not as limiting as she alleged for a number of reasons. For example, the ALJ noted that Plaintiff stopped working not because of her disability, but because her position was terminated. (R. at 82, see also R. at 103.) The ALJ also considered Plaintiff's conservative course of treatment in his credibility determination. When the record shows minimal treatment for allegedly disabling conditions, this is a factor that the ALJ may permissibly consider. 20 CFR § 404.1529(c)(3)(iv)-(vi). Here, physical therapy records reveal successful treatment for a number of discrete conditions and Dr. Slater does not appear to have treated Plaintiff for most of the issues he claimed were disabling on his opinion form.

34.     The ALJ also considered, as it was permitted to do, Plaintiff's ability to perform tasks of daily living. See 20 C.F.R. § 404.1529(c)(3)(i). Plaintiff's activities are well-documented in the medical record. She was able to walk to the store and post office, prepare food, follow causes she cared about by email, and research somewhat complex questions using the internet. (See R. at 135-36.) It was not error for the ALJ to consider these facts in determining the extent to which Plaintiff was limited.[4] This Court finds, therefore, that ALJ's credibility determination is supported by substantial evidence.

_____

[4] Plaintiff takes issue with the ALJ's characterization of her involvement with causes she cares about as "activism," but this Court notes that Plaintiff herself referred to her activities as activism. (See Docket No. 12-1 at p. 28; R. at 21, R. at 123.)

35.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:       August 3, 2020
             Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge